## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## BATESVILLE DIVISION

**SHINDID A. BRADDOCK**                                                    **PLAINTIFF**
**ADC #707527**

**v.**                             **No: 1:19-cv-00084 DPM-PSH**

**ANDREW BANKS**                                                          **DEFENDANT**

### PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to Chief United States District

Judge D.P. Marshall Jr.  You may file written objections to all or part of this

Recommendation.  If you do so, those objections must: (1) specifically explain the

factual and/or legal basis for your objection, and (2) be received by the Clerk of this

Court within fourteen (14) days of this Recommendation. By not objecting, you may

waive the right to appeal questions of fact.

### DISPOSITION

### I.  Introduction

Plaintiff Shindid Braddock, an inmate at the Arkansas Division of

Correction's McPherson Unit, filed this *pro se* civil rights complaint against

defendant Andrew Banks[1] raising failure-to-protect and equal protection claims (Doc. No. 1). Braddock subsequently filed two amended complaints (Doc. Nos. 7 & 9). In her most recent amended complaint, Braddock alleges that she notified Banks that she had been threatened and felt unsafe, she requested a transfer to another barracks, Banks did not transfer her, and she was attacked by the inmate who threatened her on April 14, 2019. Doc. No. 9 at 2-4 & 6. Her equal protection and official capacity claims against Banks have been dismissed. Doc. Nos. 12 & 24.

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts filed by Banks (Doc. Nos. 47-49). Although Braddock was notified of her opportunity to file a response, she did not do so. She also failed to file a statement setting forth disputed facts she believes must be decided at trial as required by Local Rule 56.1. *See* Doc. No. 50. Because Braddock failed to controvert the facts set forth in Banks' statement of facts, Doc. No. 49, those facts are deemed admitted. *See* Local Rule 56.1(c). Banks' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and he is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact

---

[1] Banks is a correctional officer at the McPherson Unit.

and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for

summary judgment, the court must view the evidence in a light most favorable to

the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir.

2002).  The nonmoving party may not rely on allegations or denials, and must instead

demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann*

*v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations

must be supported by sufficient probative evidence that would permit a finding in

his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations

omitted).

 An assertion that a fact cannot be disputed or is genuinely disputed must be

supported by materials in the record such as "depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials

. . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or

undisputed by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if

the evidence is such that it could cause a reasonable jury to return a verdict for either

party; a fact is material if its resolution affects the outcome of the case.  *Othman v.*

*City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Facts

On April 14, 2019, Braddock became involved in an altercation with inmate H. Ashmore when Ashmore "jumped" Braddock from behind. The altercation was witnessed and responded to by Banks. Braddock claims that before the attack, she had notified Banks of threats made against her by Ashmore, and he failed to protect her by moving her to a different barracks. The day before the altercation, April 13, 2019, Braddock filed the following grievance against Banks:

> Since yesterday 4-12-19, I have been threatened in this barracks. Sgt. Banks refused to move me. Again today two people continue to come

into my bed area to agitate and provoke me. I feel unsafe. By refusing to address this situation Sgt. Banks is failing to protect me. I need to be moved away from this barracks before something very bad happens.

*See Grievance #MCP19-00451* (attached to Braddock's Amended Complaint, Doc. No. 9 at 6).  Braddock's grievance did not identify by name the inmate or inmates who threatened her.  It also provided no specifics about what these inmates did to threaten, agitate, and provoke Braddock.[2]

Although Braddock's grievance did not identify Ashmore as an inmate who had threatened her, she claims she told Banks that Ashmore was picking on her before she filed her grievance.  *Deposition of Shindid Braddock* (Doc. No. 47-8) at 9-11.  Braddock specifically claims she reported to Banks on April 12 that Ashmore and another inmate had poured coffee on her bed, and Banks did nothing about it.  *Id.* at 10.  She also claims that she complained about Ashmore to Burks "a couple of days" before the April 12 coffee incident.  *Id.*

Braddock explained in her deposition that the dispute between her and Ashmore was over a coffee lid:

> A:   I know [Ashmore] from at the prison, but she got mad at me because of a lid she wanted for her cup and I told her that, no, she couldn't have it and she got really upset at me, so as I was coming off the toilet peeing, I saw her pouring coffee on my bed, wet coffee on my bed and they was all giggling and laughing, and I went straight to the

---

[2] When asked during her deposition why she did not include in her grievance the name of the inmate or inmates who had allegedly threatened her, Braddock claimed she had a learning disorder and post-traumatic stress disorder. *Deposition of Shindid Braddock* (Doc. No. 47-8) at 12.

door and told Sergeant Banks that she had poured this wet coffee in my bed. He did not let me out. He still refused to let me out to even talk.

Q:    Who - - what was the – or the problem between you and [Ashmore]? You said she got real mad at you for not giving her something?

A:    She asked me for a lid.

Q:    A lid, l-i-d?

A:    To go on top of her cup, like a top.

Q:    I see. Okay.

A:    She wanted to bully me. She was trying to bully me for my lid for her cup and I told her she couldn't have it and she got real upset and mad at me. She agitate and provoke – tried to agitate and provoke me by pouring the wet coffee in my bed.

Q:    So is the main, you know, upset, the main bone of contention that [Ashmore] had with you over – was over this lid that you wouldn't give her?

A:    Yes, ma'am. She was trying to bully me.

Q:    Okay.

A:    [Ashmore] was trying to be a bully.

*Id.* at 15-16.

Banks claims that Braddock never informed him that Ashmore had threatened her or harassed her prior to April 14, 2019. *Banks' Declaration* (Doc. No. 47-1) at ¶ 4. According to Banks, Braddock told him before April 14 that someone was picking on her, and she asked to be moved. He states that he "pressed Braddock to

tell me what the threat was, but all she would say is she was being picked on. I repeatedly asked Inmate Braddock to tell me who was bothering her, but she refused to name anyone." *Id.* Banks claims that he reported Braddock's complaint to his supervisor who told Banks there was nothing to investigate without a name. *Id.* As a result, Banks took no further action. *Id.*

Banks also claims that as an officer holding the rank of sergeant, he did not have any responsibility or authority over inmate housing assignments and could not have unilaterally moved Braddock (or any other inmate) to another barracks. *Id.* at ¶ 5. Nurzuhal Faust, Warden of the ADC's McPherson Unit, states in her declaration that Banks took the appropriate action under the circumstances by reporting Braddock's complaint to his supervisor who advised Banks that without a name, there was no way to initiate an investigation into Braddock's allegations. *Declaration of Nurzuhal Faust* (Doc. No. 47-3) at ¶¶ 1, 4.

Warden Faust also explains in her Declaration that the ADC has an Enemy Alert System, a policy to "[p]rovide a system to identify those inmates who are known enemies so that appropriate security precautions can be taken." *Id.* at ¶ 3; *AD 13-49, Enemy Alert System* (Doc. No. 47-4). The policy requires that an inmate identify any individual who she believes is an enemy: "This directive applies to inmates who identify another inmate(s) as an enemy or to inmates between whom there have been serious problems/altercations that are documented by staff." *AD 13-*

*49*. Presumably, Ashmore was not identified as an enemy by Braddock in the Enemy Alert System.  In her deposition, Braddock testified that she was not aware of any persons on her enemy alert list. *Braddock Deposition* at 16-18.  Her testimony was not clear regarding whether she ever requested that Ashmore be placed on her enemy alert list; she stated that she talked to the warden about her fears but did not specifically state that she requested Ashmore be placed on her list.  *Id.*

As described earlier, on April 14, 2019, at approximately 9:02 p.m., while Banks was talking with Braddock, Ashmore pushed Braddock from behind into a door.  *Declaration of Andrew Banks* (Doc. No. 47-1) at ¶ 3; *Incident Report* (Doc. No. 47-2).  In an incident report documenting the attack, Banks stated, "I ordered Inmate H. Ashmore . . . to stop but she refused[]" and both inmates "grabbed each other by the clothes and pulled each other against the wall and fell."  *Id.*  Banks' report further explains that he ordered both inmates "to stop fighting, but they both refused."  *Id.* Banks then called responders to assist in restraining and subduing Ashmore and Braddock.  *Id.*  According to his report, the inmates were then separated, restrained, and seen by medical.  *Id.*  Banks charged both inmates with disciplinary violations 12-3 Failure to obey a verbal and/or written order(s) of staff and 04-8 Battery – Use of physical force upon an inmate.  *Id.*

Braddock's medical record following the April 14, 2019 altercation reflects that "Inmate states that inmate scratch [sic] punched her on the left side of her face."

*See Braddock's Condensed Health Services Encounter (CHSE) dated April 19, 2019* (Doc. No. 47-6).[3]  Her CHSE also reflects that Braddock had a "small scratch below [her] left eye" and "denies having any other injuries at this time."  *Id.*  There is a check mark beside "Normal" indicating Braddock's general appearance and behavior were normal.  *Id.*  Braddock's CHSE also indicates that she was alert and oriented as to person, place, and time.  *Id.*; *Byers' Declaration* at ¶ 2.

Ashmore was also seen in the unit Health Services Office after the April 14, 2019 altercation.  *See Ashmore's CHSE dated April 14, 2019* (Doc. No. 47-7).  Ashmore's CHSE reflects that Ashmore had a "scratch to left bridge of nose not currently bleeding" and that she was alert and oriented as to person, place, and time.  *Id.*  Her CHSE also states: "inmate states that other inmate scratched the left side of her face and bit her left middle finger, bruising under inmats [sic] left ring finger bruised under finger nail but not bleeding, inmate has small scratch to left bridge of nose."  *Id.*

## IV.  Analysis

Banks argues that he is entitled to qualified immunity because Braddock cannot establish that he violated her clearly established constitutional rights.

---

[3] Braddock and Ashmore's medical records were accompanied by an authenticating declaration of Shelly Byers, who is the Assistant Medical Services Manager for the Arkansas Division of Correction.  *Declaration of Shelly Byers* (Doc. No. 47-5) at ¶ 1. In this capacity, Byers is a custodian of, and has access to, inmate medical records. *Id.*

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An inmate has a constitutional right to be free from attacks by other inmates. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). A correctional officer is liable for failing to protect an inmate if the inmate can make the following two-part showing:

> A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect

claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).  To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).  . . .

*Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016).  The Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise.  *See Schoelch v. Mitchell*, 625 F.3d 1041 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).  For the reasons stated below, Braddock has failed to establish that Banks violated her constitutional right to be free from attacks by other inmates, and therefore Banks is entitled to qualified immunity and judgment as a matter of law.

First, Braddock did not dispute the material facts set forth by Banks and has not provided any evidence in response to Banks' motion for summary judgment.  As a result, the Court can deem as admitted the facts set forth in Banks' statement of facts (Doc. No. 49).  Admitted material facts would include the following: Braddock told Banks that someone was picking on her and requested to be moved to a different barracks; Braddock did not identify Ashmore to Banks as the individual who was picking on her or threatening her before she was attacked; Banks repeatedly asked Braddock to identify who was bothering her; Braddock refused to name that person; Banks reported Braddock's complaint to his supervisor, but was told there was

11

nothing to investigate without a name; and Braddock did not identify Ashmore as an enemy to be included in the ADC's enemy alert system.  These undisputed facts establish as a matter of law that Banks was not made aware that Ashmore posed a substantial risk of serious harm to Braddock.  For these reasons, Banks is entitled to judgment as a matter of law.

Additionally, even if the Court does not deem as admitted the facts set forth in Banks' statement of facts, the evidence before the Court still fails to establish that Banks violated Braddock's constitutional right to be free from attacks by other inmates.  Braddock testified under oath that she notified Banks that Ashmore was picking on her.  Banks asserts in an affidavit that Braddock did not identify the inmate who was picking on her.  There is clearly a dispute about whether Banks knew the identity of the inmate who was picking on Braddock.  This factual dispute is not material, however, under the circumstances presented.  Even assuming that Braddock identified Ashmore to Banks as the inmate who was picking on her, the undisputed facts fail to establish that Banks was aware of and deliberately indifferent to a substantial risk of serious harm to Braddock.

In Braddock's deposition, she stated she told Banks before the incident that "I was being picked on, that they had poured coffee in my—wet coffee in my bed." Doc. No. 47-8 at 10.  She testified she told Banks that Ashmore was "agitating and provoking" her, and she was being "picked on." *Id.* at 11.  The grievance Braddock

filed against Banks states that she felt threatened when two people came into her bed

area to "agitate and provoke" her.  Braddock explained that Ashmore was picking

on her by pouring coffee on her bed because she refused to give Ashmore a lid to a

coffee cup. Braddock did not report that Ashmore threatened to attack her or cause

her injury.  She did not request that Ashmore be placed on her Enemy Alert list.

While these facts establish that there was a conflict between Ashmore and Braddock,

they do not give rise to an inference that Braddock faced a substantial risk of serious

harm from Ashmore.  *See e.g., Robinson v. Cavanaugh,* 20 F.3d at 895 (An inmate's

complaints regarding a "general fear for his safety" do not establish that a defendant

"acted with deliberate indifference by not placing him in protective custody."); *Jones*

*v. Wallace*, 641 Fed. Appx. 665 (8th Cir. 2016) (unpublished) (a general fear of

another inmate is not sufficient to put guards on notice of a specific threat or danger).

Furthermore, Banks did not ignore Braddock's fears – he reported her

allegations to his supervisor and was informed that he could do nothing further

without more specific information.  As a sergeant, Banks had no authority to move

Braddock on his own.   There is simply no evidence that Banks acted with deliberate

indifference to a substantial risk of serious harm to Braddock.

Finally, "[c]laims under the Eighth Amendment require a compensable injury

to be greater than *de minimis*."  *Irving v. Dormire,* 519 F.3d 441, 448 (8th Cir. 2008).

Although Ashmore pushed Braddock and started a fight, both inmates suffered only

minor scratches that did not require any specific medical treatment. Such *de minimis* injuries are insufficient to establish an actionable failure to protect claim. *See e.g., Williams v. Smith,* No. 4:10-CV-04085, 2012 WL 3815674, at *9 (W.D. Ark. Aug. 14, 2012), *report and recommendation adopted,* No. 4:10-CV-04085, 2012 WL 3818282 (W.D. Ark. Sept. 4, 2012).

For these reasons, Banks is entitled to qualified immunity on Braddock's failure-to-protect claim.

## V.  Conclusion

The undersigned recommends that the Defendant's motion for summary judgment (Doc. No. 47) be granted and Braddock's failure-to-protect claims be dismissed with prejudice. Defendant Banks is entitled to qualified immunity on these claims because the undisputed material facts show there was no constitutional violation.

DATED this 12th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE